PEARSON, MJ

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

|  |  |  |
|---|---|---|
| JIMMIE G. GEARHART, | ) | CASE NO. 5:08CV1252 |
|  | ) |  |
| Plaintiff, | ) | JUDGE LIOI |
|  | ) |  |
| v. | ) |  |
|  | ) | MAGISTRATE JUDGE PEARSON |
| MICHAEL J. ASTRUE, | ) |  |
| Commissioner of Social Security, | ) |  |
|  | ) |  |
| Defendant. | ) | **REPORT AND RECOMMENDATION** |

This is an action for judicial review of the final decision of the Commissioner of Social Security Administration ("Commissioner" or "Agency") denying the application of Plaintiff Jimmie G. Gearhart for Disability Insurance Benefits ("DIB") pursuant to Title II of the Act, 42 U.S.C. §§ 416(I) and 423, and Supplemental Security Income ("SSI") pursuant to Title XVI of the Act, 42 U.S.C. § 1382c(a).

Finding that the decision denying benefits to Gearhart is based upon properly applied relevant legal standards and supported by substantial evidence, the Court recommends that the Agency's final decision be affirmed.

## I. Introduction

Plaintiff Jimmie G. Gearhart ("Gearhart") protectively filed his disability applications on January 13, 2006, alleging disability since May 7, 2004, due to back impairments.  (Tr. 55, 103, 194.)  At the time of the administrative hearing, Gearhart was 31 years old and had completed the tenth grade.  (Tr. 55, 107.)  He has past relevant work experience as a laborer and truck driver.

(5:08CV1252)

(Tr. 104.)

The Administrative Law Judge ("ALJ") found that Gearhart had not engaged in substantial gainful activity since May 7, 2004.  (Tr. 14.)  The ALJ also found that Gearhart has a severe impairment of degenerative disc disease of the spine.  (Tr. 14.)  The ALJ determined, however, that Gearhart does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4, Listing 1.04A.  (Tr. 15.)  Finally, after considering the record in its entirety and consulting with Vocational Expert ("VE"), Carol Mosley, the ALJ concluded that although Gearhart is unable to perform any past relevant work, he was not under a "disability" as defined by the Act because he remained capable of performing jobs that exist in significant numbers within the national economy.  (Tr. 18, 19.)

After reviewing the record as a whole, including: (1) the medical evidence presented; (2) Gearhart's testimony and statements made to his medical care providers; and (3) the legal standards applied, the Court finds that the ALJ's decision was supported by substantial evidence and based upon properly applied relevant legal standards.  Thus, the final Agency decision should be affirmed and the matter dismissed.

## II.  Procedural History

Gearhart filed an application for DIB and SSI on January 13, 2006, alleging a disability due to back impairments.  (Tr. 55, 194.); *see* 20 C.F.R.§ 404.1503.[1]  The claims were initially

---

[1] The regulations governing both the DIB and SSI programs are virtually identical. Therefore, except where otherwise necessary, the Court will refer only to the DIB regulations found at 20 C.F.R. § 404.1500- 404.1599.  The last two digits of the DIB regulation mirror the

(5:08CV1252)

denied on July 7, 2006, and denied again upon reconsideration on October 26, 2006.  (Tr. 12.)

On December 1, 2006 Gearhart filed a request for an administrative hearing before an ALJ which

was held on October 22, 2007.  (Tr. 12.)  On November 1, 2007, the ALJ issued a decision

denying Gearhart benefits.  (Tr. 18-19.)  Gearhart filed a request for a review of the hearing

decision which was denied on April 20, 2008.  (Tr. 4.)  Upon denial by the Appeals Council, the

decision of the ALJ became the final decision of the Commissioner prompting Gearhart to timely

appeal to this Court.  (Tr. 5.)

Gearhart presented the following issues:

> 1. Did the Defendant err by failing to follow the "treating physician rule" under Sixth
> Circuit law by not assigning proper weight to Plaintiff's treating physician opinions?
>
> 2. Did the Defendant err by not accepting the testimony of the vocational expert in
> response to Plaintiff's hypothetical question; and, did the Defendant err by not
> including all limitations in his hypothetical to the vocational expert?
>
> 3. Did the Defendant err by not having a medical doctor involved in this case to
> analyze the thoracic herniations that (the records indicate) impinge on nerves?
>
> 4. Did the Defendant err by not finding the Plaintiff fully credible?

 ECF No. 12 at 1.

### III.  Judicial Review of a Final Agency Decision

Judicial review of the ALJ's decision denying disability benefits is limited to determining

whether there is substantial evidence to support the denial decision and whether the ALJ properly

applied relevant legal standards.  *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681

---

last two digits of the corresponding SSI regulation (*e.g.*,  20 C.R.F.§ 404.1503 corresponds with
20 C.R.F.§ 416.903).

(5:08CV1252)

(6th Cir. 1989) (*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  "Substantial evidence

is more than a scintilla of evidence, but less than a preponderance; it is such relevant evidence as

a reasonable mind might accept as adequate to support a conclusion."  *Cutlip v. Sec'y of Health

& Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994).  Under 42 U.S.C. § 405(g), the findings of the

ALJ are conclusive if they are supported by substantial evidence.

In determining the existence of substantial evidence, the reviewing court must examine

the administrative record as a whole.  *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 536

(6th Cir. 1981); *Heston v. Comm'r of Soc. Sec.,* 245 F.3d 528, 535 (6th Cir. 2001).  The ALJ's

decision must be affirmed if it is supported by substantial evidence even if the reviewing court

would have decided the matter differently, and even if substantial evidence also supports a

different conclusion.  *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999);

*Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).  The substantial evidence standard

presupposes that there is a "zone of choice" within which the Agency may proceed without

interference from the courts.  *Mullen*, 800 F.2d at 545 (*quoting Baker v. Heckler*, 730 F.2d 1147,

1150 (8th Cir.1984)).  The district court may look into any evidence in the record, regardless of

whether it has been cited by the ALJ.  *Id.*  The reviewing court, however, may not try the case *de

novo*, resolve conflicts in the evidence, or decide questions of credibility.  *See Brainard*, 889

F.2d at 681; *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

## IV.  Standard for Establishing Disability

To establish disability under the Act, a claimant must show that she is unable to engage in

substantial activity due to the existence of "a medically determinable physical or mental

(5:08CV1252)

impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months." *See* 42 U.S.C. §§ 423(d)(1)(A), 1382(c)(a)(3)(A). The claimant's impairment must prevent her from doing her previous work, as well as any other work existing in significant numbers in the national economy. *See* 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

To determine whether a claimant can engage in any substantial gainful activity, the regulations prescribe a five-step sequential evaluation. At Step One, the ALJ considers the claimant's work activity. A claimant is not disabled if engaged in substantial gainful activity, *i.e.*, working for profit. At Step Two, the ALJ considers the medical severity of the claimant's impairments. A claimant is not disabled if she does not have a severe medically determinable physical or mental impairment that also meets the duration requirement in 20 C.F.R. § 404.1509, or a combination of impairments that are severe and meets the duration requirement. At Step Three, the ALJ determines whether the claimant has an impairment that meets or equals one of the criteria of an impairment listed in Appendix 1 and meets the duration requirement. *See* 20 C.F.R. § Part 404, Subpart P, Appendix 1. A claimant is disabled if she has an impairment that meets the listing and the duration requirement. Before considering the fourth step, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"), *i.e.* the claimant's ability to perform physical and mental work on a sustained basis despite limitations from impairments. At Step Four, the ALJ considers whether the claimant's RFC permits him to perform past relevant work. At the final step, Step Five, the ALJ considers the claimant's RFC and his age, education, and work experience to determine whether the claimant may work. Even if the claimant's

-5-

(5:08CV1252)

impairment does prevent her from doing her past relevant work, if other work exists in the national economy that the claimant can perform, then the claimant is not disabled. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990); *see also Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003) (describing five-step evaluation).

If a claimant can be found disabled or not disabled at any step of the sequential evaluation, the review ends at that step. 20 C.F.R. § 404.1520(a). In the instant case, the ALJ decided at Step Four that Gearhart could not return to his past work and continued to Step Five of the five-step sequential evaluation. (Tr. 18-19.) On November 1, 2007, the ALJ determined that Gearhart was not under a "disability" as defined by the Act because Gearhart can perform a full range of light work and a significant number of other jobs in the national economy including a dishwasher, packer, and small parts assembler. (Tr. 15-19.)

The claimant bears the ultimate burden of proof on the issue of disability. *See* 20 C.F.R. § 404.1512(a) ("In general, you have to prove to us that you are blind or disabled"); *Richardson v. Heckler*, 750 F.2d 506, 509 (6th Cir. 1984) ("A social security disability claimant bears the ultimate burden of proof on the issue of disability"). Significantly, she bears the burden of proving disability through Step Five of the sequential evaluation. *See* 20 C.F.R. § 404.1512(a); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). Moreover, the claimant has the burden of providing detailed medical evidence allowing the ALJ to make an informed decision. *See Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986). Last, the claimant must not only produce a diagnosis of an impairment, but also demonstrate correlative functional limitations. 20 C.F.R. § 404.1512(c).

-6-

(5:08CV1252)

## V.  <u>Law and Analysis</u>[2]

### A.  <u>The ALJ Properly Evaluated and Denied Gearhart's Impairment Without the Aid of a Medical Expert</u>

It is within the ALJ's discretion "to determine whether further evidence, such as additional testing or expert testimony, is necessary." *Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001) (*citing* 20 C.F.R. §§ 404.1517, 416.917 ("If your medical sources cannot or will not give us sufficient medical evidence about your impairment for us to determine whether you are disabled or blind, we *may* ask you to have one or more physical or mental examinations or tests.")) (Emphasis added).  The *only* time an ALJ is required to consult a medical expert is when the ALJ makes a finding of medical equivalence under the listings.  *See* 20 C.F.R. §§ 404.1526(b) and 416.926(b).

Gearhart asserts two arguments regarding why a medical expert should have been present at his hearing before the ALJ.  First, Gearhart argues that his back impairments meet or medically equal Listing 1.04A and a medical expert would have confirmed this finding.[3]  ECF No. 12 at 15.  Second, Gearhart argues that the ALJ erred by finding him not fully credible and had a medical expert been present, the medical expert would have helped to support Gearhart's credibility.  ECF No. 12 at 15.

---

[2]  The Court's analysis addresses the issues presented in a sequence that eliminates redundancies that might occur if the issues were addressed in the sequence presented by the parties.

[3]  Plaintiff does not allege that he meets Listing 1.04B or 1.04C.  Thus, he has waived any such arguments, as well as all other unraised contentions.  *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989) (explaining arguments not presented to the district court are abandoned).

(5:08CV1252)

### 1. Gearhart Fails to Meet or Equal Listing 1.04A

At the third step of the sequential evaluation, the ALJ determines whether the claimant has an impairment that meets or equals an impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listing").  *See* 20 C.F.R. § 404.1520(a)(4)(iii).  If an impairment exists that meets the description of a Listing or its equivalent, the claimant will be found disabled.  *See* 20 C.F.R. § 404.1520(d) ("If you have an impairment(s) which meets the duration requirement and is listed in appendix 1 or is equal to a listed impairment(s), we will find you disabled without considering your age, education, and work experience.").  Significantly, a claimant has the burden of showing that he has satisfied each individual requirement of a Listing.  *Thacker v. Soc. Sec'y Admin.*, 93 F. Appx. 725, 728 (6thCir. 2004) ("When a claimant alleges that he meets or equals a listed impairment, he must present specific medical findings that satisfy the various tests listed in the description of the applicable impairment or present medical evidence which describes how the impairment has such equivalency.").

Listing 1.04A reads as follows:

Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. *With:*
A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);

20 C.F.R. Pt. 404, Subpt. P, App. 1 Listing 1.04A.

Gearhart asserts that the evidence of the record demonstrates that he meets or medically

-8-

(5:08CV1252)

equals 20 C.F.R. Pt. 404, Subpt. P, App. 1 Listing 1.04A ("Listing 1.04A").  ECF No. 12 at 14.

Gearhart relies on his treating physician's, Dr. R. Pitt, opinions regarding his disorder of the

spine, T7-8 paracentral herniated disc, evidence of nerve root compression and neuro-anatomic

distribution of pain.  ECF No. 12 at 14.  Gearhart also contends that "his fingers go numb."  ECF

No. 12 at 14.

        The defendant counters that Gearhart does not have an impairment or combination of

impairments that meets or medically equals one of the impairments in Listing 1.04A because he

fails to identify "sensory or reflex loss" and muscle weakness or muscle atrophy as required by

the Listing.  ECF No. 14 at 12.

        The ALJ correctly determined that Gearhart does not have an impairment or combination

of impairments that meets or medically equals one of the listed impairments in Listing 1.04A.

(Tr. 15.)  Coming "close" to equaling a Listing is not enough at Step Three.  *See Dorton v.*

*Heckler*, 789 F.2d 363, 367 (6th Cir. 1986).  Rather, to establish medical equivalence, a claimant

must present "medical findings equal in severity to all the criteria for the one most similar listed

impairment."  *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990).  Although Gearhart has some

evidence of nerve root compression, the record does not document that he has satisfied all of the

requirements under Paragraph A.  For example, Dr. Pitt reported that Gearhart does not have

"sensory or reflex loss" as required by Listing 1.04A.[4]  Additionally, when directly asked "Does

your patient have any muscle weakness" and "If yes, please identify the affected muscles and

---

        [4] The ALJ recapped that "There is no evidence of significant muscle spasm, muscle
atrophy, significant motor weakness, sensory changes, or reflex abnormalities."  (Tr.17.)

-9-

(5:08CV1252)

describe using the grading system 0 to 5," Dr. Pitt failed to provide any answer regarding the muscle weakness requirement.  (Tr. 192.)  Dr. Pitt, nevertheless, opined that Gearhart met or medically equaled Listing 1.04A even though he failed to meet all of the listed requirements. (Tr. 193.)  In light of such evidence, substantial evidence exists supporting the ALJ's finding that Gearhart did not satisfy the requirements of Listing 1.04A.

Additionally, an ALJ may rely on a State agency physician's documented medical judgment as to whether the claimant's impairment meets or medically equals a Listing.[5]  *See* 20 C.F.R. § 404.1526(e).  In the instant case, the State agency physician, Dr. Kamala Saxena, suggested in her medical findings that Gearhart's back impairments do not satisfy several criteria in Listing 1.04A.  (Tr. 15.)  In 2006, Dr. Saxena examined Gearhart and reported that he had no muscle atrophy, motor or sensory loss.  (Tr. 15.)  This medical examination showed Gearhart's cervical and dorsolumbar spine range of motion was normal.  (Tr. 15.)  In the May 2006 report, Gearhart's neurological exam and reflexes were reported as normal.  (Tr. 15.)  Furthermore, his joints were deemed normal with "no swelling, redness, or deformity."  (Tr. 15.)  Last, Gearhart's shoulder, elbow, wrist, finger, hip, knee, foot, and toe muscles were found to be "normal."  (Tr. 159.)

Failure to meet even one required criterium dictates a finding that the claimant does not meet or medically equal a listed impairment.  *See Zebley*, 493 U.S. at 531.  As explained above,

---

[5]  "In cases where the State agency or other designee of the Commissioner makes the initial or reconsideration disability determination, a State agency medical or psychological consultant or other designee of the Commissioner (see § 404.1616) has the overall responsibility for determining medical equivalence."  20 C.F.R. § 404.1526(e).

(5:08CV1252)

Gearhart failed to meet several required criteria. Accordingly, the Court finds that the existing

medical sources contain substantial evidence supporting the ALJ's determination that Gearhart

did not meet all of the requirements necessary to satisfy Listing 1.04A.

### 2.  The ALJ Properly Evaluated Gearhart's Complaints of Pain

Gearhart argues that the ALJ erred in failing to properly consider his pain allegations as

completely credible.[6] ECF No. 12 at 14.  Gearhart claims that his treating physician's opinion

supports his complaints of pain and impairments.  ECF No. 12 at 14.  For example, Gearhart

argued that his treating physician prescribed him OxyContin to alleviate his severe pain.  ECF

No. 12 at 14.  Gearhart also argues that driving for an hour results in exhaustion and back pain.

ECF No. 12 at 17.

The ALJ is required to consider all symptoms, including pain, and the extent to which

those symptoms can reasonably be accepted as consistent with objective medical evidence in

determining whether a claimant is disabled.  20 C.F.R. §404.929(a).  The ALJ must also consider

the claimant's own statements about her pain and other symptoms, as well as the effect those

symptoms have on the claimant's daily activities and ability to work.  *Id*.  Credibility

determinations regarding a claimant's subjective complaints rest solely with the ALJ.  *See*

*Hopkins v. Comm'r of Soc. Sec.*, 96 Fed. Appx. 393. 395 (6th Cir. 2004).  The ALJ's credibility

---

[6] Gearhart also argues that the ALJ erred in failing to obtain an expert medical opinion during the administrative law hearing.  ECF No. 12 at 14.  As previously stated, the ALJ did not make a finding of medical equivalence, so he was not required to obtain the services of a medical expert.  Based upon the medical reports and opinions that the ALJ credited, the Court defers to the ALJ's decision not to consult a medical expert.  *See Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001) ("An ALJ has discretion to determine whether further evidence, such as additional testing or expert testimony, is necessary.").

(5:08CV1252)

findings are entitled to considerable deference and should not be discarded lightly.  *See Villareal v. Sec'y of Health & Human Servs.*, 818 F.2d 461, 463 (6th Cir. 1987).

In addition, there are seven factors the ALJ should consider in making a determination of credibility.[7]  The ALJ, however, is not required to analyze all seven factors, but should make clear that he considered the relevant evidence.  *See Cross v. Comm'r of Soc. Sec.,* 373 F. Supp.2d 724, 733 (N.D. Ohio 2005).

In determining the credibility of a claimant's statements, the ALJ must include specific reasons "supported by evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reason for the weight." SSR 96-7p; *see also Cross*, 373 F. Supp.2d at 733.  Social Security Regulation 96-7p further instructs that "[t]he finding on credibility of an individual's statements cannot be based on an intangible or intuitive notion about an individual's credibility.  The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision." SSR 96-7p.

The ALJ found that Gearhart's impairments may cause his alleged symptoms, but his statements regarding "intensity, persistence and limiting effects of these symptoms are not

_____

[7]  The seven factors are: (1) individual's daily activities; (2) location, duration, frequency, and intensity of the individual's pain; (3) factors that precipitate and aggravate the symptoms; (4) type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 416.929(c); SSR 96-7p.

-12-

(5:08CV1252)

entirely credible." (Tr. 17.)  The credibility determination must contain specific reasons for the finding, "supported by evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reason for the weight." *Id*.  The ALJ correctly detailed specific reasons for Gearhart's lack of credibility and subjective complaints of pain and limitation.

In assessing the credibility of Gearhart's statements, the ALJ noted the following evidence regarding Gearhart's daily activities.  (Tr. 16-17.)  During the administrative hearing in October 2007, Gearhart testified that he is unable to complete most activities around the house including carrying groceries, cleaning and washing.  (Tr. 16, 216, 220.)  In April 2006, Gearhart reported that his daily activities included taking his animals outside, preparing meals twice a week, completing some of the household chores, talking on the phone, and grocery shopping. (Tr. 16, 74-78.)  In June 2006, Gearhart explained that his "back went out" while attempting to put a leash on his dog to go for a walk.  (Tr. 17, 177.)  In August 2006, Gearhart reported that "he has increased his activities somewhat and has been walking his dogs a little more."  (Tr. 17, 175.) The ALJ noted an inconsistency with Gearhart's statements about his pain and his various reported physical activities.  (Tr. 17.)

In addition the inconsistency between Gearhart's  physical activities and complaints of pain, the ALJ determined that Gearhart's complaints of debilitating pain and fatigue were inconsistent with the following objective medical evidence.  (Tr. 17.)  In October 2006, Dr. Saxena examined Gearhart and noted that he could occasionally lift and/or carry 50 pounds and frequently lift and/or carry 25 pounds.  (Tr. 17, 165.)  Dr. Saxena also reported that Gearhart

-13-

(5:08CV1252)

could stand, sit, and/or walk for about six hours in an eight-hour workday.  (Tr. 17, 165.)

 The aforementioned opinions of Dr. Saxena were affirmed by Dr. Lokendra Sahgal on

May 30, 2006.  (Tr. 17, 157.)  Dr. Sahgal examined Gearhart and documented that he "had no

difficulty with tasks requiring walking or handling objects" and his "ability to climb, balance,

stoop, crouch, kneel or crawl was not limited."  (Tr. 17, 163.)  Dr. Sahgal explained that "there

might be some impairment with prolonged walking, lifting and carrying," but "clinically, there is

no impairment with respect to sitting, walking, handling objects, hearing, speaking, or traveling."

(Tr. 17, 163.)  In September 2006, Dr. Pitt treated Gearhart and reported his pain as "moderate."[8]

(Tr. 18, 190.)  But in contradiction to that report of "moderate" pain, Dr. Pitt noted that in an

eight-hour day Gearhart can never carry items, but he can lift up to ten pounds.  (Tr. 18, 190.)

Dr. Pitt reported that Gearhart can never crawl, climb, stoop, crouch, or kneel; however, the

physician found that he can bend and squat occasionally and reach frequently.  (Tr. 18, 190.)

 As a result of all the objective medical evidence in the record, the ALJ determined that

even though Gearhart is not free of pain, "[t]here is no evidence of *significant* muscle spasm,

muscle atrophy, significant motor weakness, sensory changes, or reflex abnormalities" and,

therefore, Gearhart's allegations of disabling pain were not fully credible.  (Tr. 17.)

 It is the ALJ's function not that of a reviewing court to determine the credibility of the

claimant.  *Hardaway v. Sec'y of Health & Human Servs.*, 823 F.2d 922, 928 (6th Cir. 1987).  It is

appropriate for an ALJ to discount a claimant's credibility when an ALJ finds contradictions

---

 [8] The classification "moderate" means that the pain "could be tolerated but would cause
marked handicap in the performance of the activity precipitating the pain."  (Tr. 191.)

(5:08CV1252)

among the medical reports, claimant's testimony, and other evidence such as those detected in

the instant case.  *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 531 (6th Cir. 1997).  The ALJ,

while not specifically addressing all seven factors, discussed several of the factors in his decision

and therefore considered requisite evidence in rendering his determination that Gearhart's

testimony was not fully credible.  After reviewing the ALJ's written decision and all other

relevant evidence in the record, the Court finds that substantial evidence exists to support the

ALJ's decision to discredit (*i.e.* find less than completely credible) Gearhart's subjective

statements of pain.

### B.  The ALJ Properly Analyzed the Opinions of the Treating Physician

A treating physician's opinion does not enjoy a presumption of correctness

when the record contains contradictory evidence.  Rather, once well-supported contradicting

evidence is introduced, the treating physician's opinion is no longer entitled to controlling

weight.  *See Hofslien v. Barnhart*, 439 F.3d 375, 376 (7th Cir. 2006) ("Equally obviously, once

well supported contradicting evidence is introduced, the treating physician's evidence is no

longer entitled to controlling weight . . . when evidence in opposition to the presumed fact is

introduced . . . the rule drops out and the treating physician's evidence is just one more piece of

evidence for the administrative law judge to weigh.") (citations omitted).

Under the Agency's regulations and numerous court holdings, treating physician opinions

on the issue(s) of the nature and severity of an individual's impairment(s) may be given

controlling weight in appropriate circumstances, that is, if it is supported by medically acceptable

clinical and laboratory diagnostic techniques and if it is "not inconsistent" with the other

(5:08CV1252)

substantial evidence in the case record.  *See* 20 C.F.R. § 404.1527(d)(2) ("If we find that a

treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-

supported by medically acceptable clinical and laboratory diagnostic techniques and is not

inconsistent with the other substantial evidence in your case record, we will give it controlling

weight."); *see also Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993) ("This court has

consistently stated that the Secretary is not bound by the treating physician's opinions, and that

such opinions receive great weight only if they are supported by sufficient clinical findings and

are consistent with the evidence.").

 Gearhart has two treating physicians of record.  The ALJ gave less weight to one of them,

Dr. Pitt.  Gearhart objects and argues that Dr. Pitt's medical opinions are consistent with

objective medical evidence and that the ALJ failed to properly weigh Dr. Pitt's opinions.  ECF

No. 15 at 2.  Gearhart further asserts that the ALJ erred by failing to adopt Dr. Pitt's opinions that

Gearhart has the capacity for less than sedentary work and that his impairments meet or equal

Listing 1.04A.  ECF No. 12 at 12.  Dr. Arthur Kalman, another treating physician, found that

Gearhart had full strength in all extremities, negative straight leg raising, and full active range of

motion of the cervical and lumbar spines, contradicting Dr. Pitt.  (Tr. 145.)

 In April 2004, an MRI revealed a right and left paracentral disc herniation at T7-8.  ECF

No. 15 at 2.  In 2007, Dr. Pitt reported that Gearhart suffered from a "T7-8 paracentral disc

herniation."  (Tr. 192.)  Gearhart noted that Dr. Pitt and other medical opinions of record discuss

numbness, muscle spasms and soreness.  ECF No. 15 at 2.

 The ALJ observed that some of Dr. Pitt's opinions contradicted other medical evidence

-16-

(5:08CV1252)

in the record.  (Tr. 18.)  *See* 20 C.F.R. § 404.1527(c)(2) (Medical evidence may be discounted if

it is internally inconsistent or inconsistent with other evidence).  The ALJ reasonably declined to

give Dr. Pitt's opinions controlling weight because the ALJ determined that "*only* some of the

restrictions are consistent with the findings on examination and the objective medical evidence."

(Tr. 18.) (Emphasis added.)

   For example, the ALJ noted that in September 2007, Dr. Pitt reported that Gearhart could

occasionally lift up to 10 pounds, but *neve*r carry any weight.  (Tr. 18, 190.)  Dr. Pitt also opined

that Gearhart could sit and stand for one hour and walk for fifteen minutes.  (Tr. 18, 189.)

Additionally, Dr. Pitt noted that Gearhart could occasionally bend and squat, frequently reach,

but *never* crawl, climb, stoop, crouch, or kneel.  (Tr. 18, 190.)  Last, Dr. Pitt reported positive

straight leg raising and limited spinal range of motion.  (Tr. 18, 192-93.)

   Dr. Saxena, a State agency physician who examined Gearhart, completed a Physical

Residual Functional Capacity assessment form and noted that Gearhart could occasionally lift

and/or carry 50 pounds and frequently lift and/or carry 25 pounds.  (Tr. 17, 165.)  Dr. Saxena

reported that Gearhart could stand, sit, and/or walk for about six hours in an eight-hour workday.

(Tr. 17, 165.)

   The aforementioned opinions of Dr. Saxena were affirmed by Dr. Sahgal on May 30,

2006.  (Tr. 17, 157.)  Dr. Sahgal performed a consultative examination and documented that

Gearhart "had no difficulty with tasks requiring walking or handling objects" and his "ability to

climb, balance, stoop, crouch, kneel or crawl was not limited."  (Tr. 17, 163.)  Dr. Sahgal

explained that "there might be some impairment with prolonged walking, lifting and carrying,"

-17-

(5:08CV1252)

but "clinically, there is no impairment with respect to sitting, walking, handling objects, hearing, speaking, or traveling."  (Tr. 17, 163.)

Therefore, the opinions of other recognized medical sources of record do not agree with Dr. Pitt's opinions.  (Tr. 157-63, 165.); s*ee* 20 C.F.R. § 404.1527(d)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.").  This evidence provides substantial evidence in support of the ALJ's decision to decline affording Dr. Pitt's opinions controlling weight.

Gearhart also asserts that Dr. Pitt's medical opinions are "more significant" than that of the State agency physician Dr. Saxena who completed a consultative medical examination on one occasion while Dr. Pitt treated Gearhart once a month.  ECF No. 15 at 1.  In his reply brief, Gearhart objected to the ALJ's decision to give more deference to the opinion of a consultative physician than one of Gearhart's treating physicians, Dr. Pitt.[9]  ECF No. 15 at 2.

Gearhart's argument lacks merit, however, as the ALJ in this case properly weighed the medical source opinions of record in determining that Dr. Pitt's medical opinions would not control.  The ALJ's determination of  "what an individual can still do despite his or her limitations" is a legal decision rather than a medical one.[10]  Based on the ALJ's review of the evidence of record, he "[c]onsidered all symptoms and the extent to which these symptoms can reasonably be accepted as *consistent* with medical evidence and other evidence . . ." and

---

[9] Gearhart argues that "Clearly Dr. Pitt's opinion is much more significant than that of a physician who has only seen Plaintiff one (1) time ever, for (10) minutes or less."  ECF No. 15 at 1.

[10] *See* 20 C.F.R. § 404.1545(a)(1).

-18-

(5:08CV1252)

determined that Gearhart retained the RFC to "perform a range of light work."[11]  (Tr. 15.) (Emphasis added).

The Court finds that the ALJ's decision evidences a reasonable explanation of how he resolved conflicting medical opinions, and the weight he gave the treating medical source opinions of record was adequate to support his decision.  *See Bass v. McMahon*, 499 F.3d 506, 512 (6th Cir. 2007) ("Wilson requires reversal when a treating physician's opinion was ignored and no reasons for doing so were provided . . . That is not the case we have here.").

### C.  **The ALJ Properly Analyzed the Vocational Expert's Opinions**[12]

Gearhart argues that the ALJ erred at Step Five by failing to include Dr. Pitt's reported limitations in the ALJ's hypothetical question to the Vocational Expert ("VE").  ECF No. 12 at 13. The defendant asserts that the ALJ correctly incorporated only those limitations deemed credible.  ECF No. 14 at 13.

A hypothetical question must precisely and comprehensively set out every physical and mental impairment of the applicant that the ALJ accepts as true and significant.  *See Varley v.*

---

[11]  "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

[12]  At Step Four, the ALJ found that Gearhart is unable to perform his past relevant work, and thus continued the sequential analysis.  (Tr. 18.)  The ALJ then enlisted a Vocational Expert to help him to determine what work, if any, Gearhart could perform and whether that work existed in significant numbers in the national economy.

(5:08CV1252)

*Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).  Where the hypothetical

question is supported by the evidence in the record, it need not reflect unsubstantiated allegations

by claimant.  *See Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990).

However, where the ALJ relies upon a hypothetical question that fails to adequately account for

all of the claimant's limitations, it follows that a finding of disability is not based on substantial

evidence.  *See Newkirk v. Shalala*, 25 F.3d 316, 317 (6th Cir. 1994).  A hypothetical question is

not erroneous where at least one doctor substantiates the information contained in the question.

*See Hardaway v. Sec'y of Health & Human Servs.*, 823 F.2d 922, 927-28 (6th Cir. 1987) (per

curiam).

In the instant case, the VE testified that a hypothetical worker of Gearhart's age,

education, vocational background, and RFC would be capable of performing light work activity as

a dishwasher, packer, and small parts assembler.[13]  (Tr. 227-28.)  On cross-examination,

Gearhart's counsel added restrictions to the hypothetical and inquired whether a claimant could

perform the jobs previously stated if he has a "sit/stand option" and would miss three or more

days of work each month.  (Tr. 229.)  The VE testified that with additional restrictions, a claimant

could not perform the jobs previously identified.  (Tr. 229.)

The Sixth Circuit has held that when an ALJ poses hypothetical questions to a vocational

expert, she "[i]s required to incorporate only those limitations accepted as credible by the finder of

---

[13]  The ALJ noted the following: There are over 3,500 dishwasher jobs in the state of
Ohio and over 500,000 in the nation.  There are over 3,000 packer jobs in the state of Ohio and
over 450,000 in the nation.  There are over 4,000 assembler jobs in the state of Ohio and over
600,000 jobs in the nation.  (Tr. 19.)

-20-

(5:08CV1252)

fact."  *See* *Casey v. Sec'y of Health & Human Servs., 987 F.2d 1230, 1235 (6th Cir. 1993)*.  The

ALJ observed that some of Dr. Pitt's opinions were internally inconsistent, and therefore the

ALJ's hypothetical questions appropriately only included limitations that the ALJ found credible

and that were supported by substantial evidence.  (Tr. 18.)

     The VE's testimony in response to a hypothetical question with the added limitations of

Gearhart's counselor should not be afforded controlling weight because those limitations were not

supported by substantial medical evidence.  By contrast, the ALJ was fully justified in relying on

the VE's answers given in response to a hypothetical question that accurately portrayed Gearhart's

impairments supported by substantial evidence in the record.  *See* *Varley v. Sec'y of Health &*

*Human Servs., 820 F.2d 777, 781 (6th Cir. 1987)*.

     The ALJ observed the VE's testimony and determined that the testimony was reliable

regarding the type and availability of jobs Gearhart could perform.  There was substantial

evidence to support the ALJ's finding that Gearhart was able to perform light work and that a

significant number of jobs existed in the national economy which he could perform.  Thus, the

ALJ did not err in relying on the testimony of the VE.

**VI.  Conclusion and Recommendation**

     For the foregoing reasons, the Court finds that substantial evidence supports the ALJ's

conclusion that Gearhart was not under a "disability" as defined by the Act and, therefore, is not

entitled to benefits.  The Court recommends that the Agency's final decision denying benefits to

(5:08CV1252)

Jimmie G. Gearhart be affirmed in its entirety and that the referral to the undersigned be

terminated.


 July 17, 2009                                    /s/ Benita Y. Pearson
Date                                            United States Magistrate Judge

## **OBJECTIONS**

Objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); s*ee also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).